**E-FILED on** 9/11/2008

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SIKANDER RAJPUT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE[1],<br>Commissioner of Social Security<br><br>　　　　Defendant. | No. CV-06-04306 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 13, 14]** |

　　Plaintiff Sikander Rajput ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying his claim for disability insurance benefits under the Social Security Act. Plaintiff and Defendant filed cross motions for summary judgment. Plaintiff alleges that the Administrative Law Judge ("ALJ") improperly rejected the opinion of the treating physician, improperly discounted Plaintiff's symptom-reporting, and made improper and unsupported findings as to plaintiff's residual functional capacity ("RFC"). In accordance with this court's procedures for review of social security actions, the parties' motions have been submitted without oral argument. The court has considered the moving and responding papers and the record

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 1, 2007. Pursuant to Ruled 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Jo Anne B. Barnhart as the Defendant in this matter.

filed in this case. For the reasons set forth below, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## I. BACKGROUND

### A.  Procedural History

On August 10, 2004 Plaintiff filed for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. Administrative Transcript ("Tr.") 52-56. His application was denied initially and on reconsideration. Tr. 31, 39. Plaintiff then filed a request for a hearing before an ALJ. Tr. 44. In a January 19, 2006 decision, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work and that, based on Plaintiff's capacity for sedentary work, his age, education, and work experience he was not disabled. Tr. 11-18. Plaintiff appealed. Tr. 7. In an order dated May 16, 2006, the Appeals Council found no reason for review of the ALJ's decision and thus denied the request for review. Tr. 4-6.

### B.  Plaintiff's Vocational and Medical History

Plaintiff was born in Pakistan on January 30, 1961, making him 43 years old at the date of the alleged onset of his alleged disability (June 15, 2004). Tr. 69. After coming to the United States on August 17, 1982, he attended Evergreen Valley College, but did not graduate. *Id.* In 1983, Plaintiff started working as a shipping clerk for Verbatim Corporation. *Id.* In 1985 he found a job at Monolithic Memories, but his employment was terminated in 1987. *Id.* Plaintiff worked in temporary positions at Sun-Micro Systems until he was hired as a permanent employee in 1990. *Id.* He worked as a database coordinator until his employment with Sun-Micro Systems was also terminated. *Id.* at 70.

In 1995, Plaintiff was diagnosed with Type II diabetes and began experiencing thyroid problems. *Id.* Plaintiff found a job with Viking Freight, working as a data entry clerk, where he worked for one year before his employment was terminated. *Id.* In 1998, Plaintiff began working at Macy's as a fine watches sales person, but quit his job voluntarily in 2001 to visit his sister, who lived in Pakistan and was not feeling well. *Id.* While still in Pakistan, in 2002, Plaintiff suffered from a hernia problem and underwent an operation. *Id.* Plaintiff returned to the United States shortly thereafter and began working as a cab driver in San Francisco. *Id.* However, he began

experiencing problems with diabetes and his hernia. *Id.* In May of 2004, Plaintiff found a job with Stevens Creek Auto Imports, but found the hours to be too long to handle. *Id.*

Plaintiff testified that he had sciatica induced leg pain, suffered from depression, and dealt with thyroid and vision problems. He has type II diabetes and a hernia and Plaintiff testified that "he stopped working due to pain in his legs from diabetes." *Id.* at 13.

The record contains a document entitled "Declaration of Christine Weigen, M.D.," which is apparently a signed statement based upon a telephone conversation between Dr. Weigen and Plaintiff's counsel. In this declaration, Dr. Weigen stated that Plaintiff first started receiving care from her on July 7, 2004. Tr. 210. Her initial diagnoses included type II diabetes, peripheral neuropathy, hyperlipidemia, and hypothyroidism. Tr. 210. In describing the symptomatic manifestations of neuropathy, Dr. Weigen noted that Plaintiff had pain in his legs and decreased sensation in his lower extremities. Tr. 211. When asked about other diagnoses, Dr. Weigen indicated tobacco addiction, noting: "[W]e've not been able to successfully help him stop, and of course it really exacerbates his likelihood of developing atheroschlerotic disease, heart attacks, strokes, kidney failure." *Id.* Finally, Dr. Weigen provided a full list of his problems: "[H]is problem list includes tobacco addiction, his uncontrolled diabetes, hyperlipidemia, hypothyroidism, his peripheral vascular disease, which is the femoral artery stenosis. He has an inguinal hernia, which still remains unrepaired, depression, and then for the last few months he's had chronic right hip pain secondary to a muscle spasm." *Id.* Dr. Weigen states that Plaintiff's current symptoms, especially the leg pain, do not allow him to work in any setting. Tr. 216. It is unclear whether this opinion is based on Plaintiff's subjective complaints or on some objective finding.

On October 12, 2004, Clark E. Gable, M.D., a consultative examiner for the Disability Determination Services, evaluated Plaintiff's impairments. According to the ALJ's decision:

> Dr. Gable diagnosed insulin dependent diabetes, apparently under fair control without implications; recurrent large inguinal hernia, . . . depression, with no suicidal ideation and no prescribed medication; memory problems alleged for many years, . . . hypothyroidism on replacement therapy; status-post fracture of the right femur, with hip pain and no diminution of range of motion; and, post treatment for tuberculosis. [Dr. Gable] opined that the claimant could perform light work and recommended hernia repair.

Tr. 13.

On October 25, 2004, Tej M. Singh, M.D. evaluated Plaintiff for the potential for peripheral neuropathy. "Dr. Singh found no palpable pulses in the groin; no ulcers or ischemic changes to the lower legs or feet." Tr. 13-14, 201. Dr. Singh found that "the claimant most likely has peripheral vascular disease secondary to diabetes and diet." Tr. 14, 201. Dr. Singh noted further tests to be administered but there is no evidence that Plaintiff undertook that testing. Tr. 201.

Susan E. Klear, Ph.D. did a psychological examination on Plaintiff, including several tests, and reported her diagnostic impressions in a report dated September 20, 2004:

<u>DIAGNOSTIC IMPRESSIONS</u>
```
Axis I:          V62.2        Occupational problem
Axis II:   V71.09             No diagnosis, narcissisctic personality features
Axis III:                     Diabetes Type II, insulin dependent
Axis IV:                      Unemployed, discord with siblings, inadequate finances
Axis V:    GAF =75            (Current)
```

Tr. 154.

## II.  LEGAL STANDARD

**A.     Standard for Reviewing the Commissioner's Decision**

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Plaintiff benefits. Under section 405(g), the district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)). However the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. §405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence supports the Commissioner's findings, this court must review the administrative record as a whole, weighing evidence that both bolsters and detracts from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence is susceptible to more than one rational interpretation, this court must adopt the decision of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—No. CV-06-04306 RM
RMWLC3                                           4

the ALJ. *Sandgathe*, 108 F.3d at 980. "However, even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (internal quotations and citations omitted).

### B. Standard for Determining Disability

A person is "disabled" for the purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992); *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Social Security disability cases are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id.* If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limit the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[2] to perform his or her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The claimant has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner then bears the burden of establishing that the claimant

---

[2] A claimant's residual functional capacity is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

can perform other substantial gainful work;[3] the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 11257.

### III.  ANALYSIS

Plaintiff claims the ALJ erred in: (1) improperly rejecting the opinion of the treating physician; (2) improperly discounting Plaintiff's symptom-reporting; (3) making improper and unsupported findings as to Plaintiff's residual functional capacity ("RFC") and failing to hold the Commission to its burden of proving at step five that there exists a significant numbers of jobs that Plaintiff could perform.

### A.      Rejection of Treating Physician's Opinion

Plaintiff contends that a treating doctor's opinion "generally" deserves "more weight" and possibly "controlling weight." Plaintiff's Motion for Summary Judgment and/or Remand ("Motion"), 3 (citing 20 C.F.R. § 404.1527(d)(2)). Furthermore, Plaintiff contends that:

> On judicial review, the sufficiency standard to be applied depends on whether the opinion was contradicted by other medical opinion. If the opinion was uncontradicted, the question is whether the ALJ found clear and convincing reasons for the rejection; if the opinion was contradicted (Plaintiff does not concede this), the question is whether the ALJ found specific, legitimate reasons supported by the record.

Motion, 4 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Plaintiff contends that the ALJ did not give Dr. Weigen's opinion appropriate weight nor did he provide sufficient reasons for rejecting her opinion.

The ALJ rejected only the conclusory opinion of Dr. Weigen that Plaintiff "is not able to work." Tr. 14. Dr. Weigen stated that Plaintiff's leg pain was Plaintiff's most disabling symptom. The ALJ concluded that Dr. Weigen's statement was more advocacy for the Plaintiff than it was an objective assessment. The ALJ made this finding based, in part, on the Plaintiff's failure to comply with his physician's treatment recommendations including Plaintiff's failure to undertake follow-up

---

[3] There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett*, 180 F.3d at 1099.

testing concerning his lower extremities as recommended by Dr. Singh to whom Plaintiff had been referred for evaluation. The ALJ stated:

> Dr. Weigen opined that the claimant is not able to work, which is a determination reserved to the Commissioner (20 CFR § 404.1527). Dr. Singh recommended further testing and those tests have either not been completed or the records are not in the medical evidence of record. Therefore the [ALJ] regards Dr. Weigen's statements regarding the claimant's impairments [Plaintiff is unable to work] are [sic] patient advocacy, and not a residual functional capacity assessment based on the appropriate medical signs and findings.

*Id.*

When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyn v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ's only rejection was of Dr. Weigen's conclusory opinion which was not supported by clinical findings. In fact, the opinion conflicts with that of Dr. Gable who felt that Plaintiff could sit up to six hours per day with usual breaks and could stand or walk for a like period. Dr. Weigen's conclusion would also seem inconsistent with Dr. Gable's essentially normal musculoskeletal examination and a grossly normal neurological exam of Plaintiff. Finally, if Plaintiff were suffering from severe leg pain, it seems he would have followed up with Dr. Singh to whom he had been referred.

The ALJ did consider the opinion of Dr. Weigen who talked about Plaintiff's depression and who offered some speculation concerning why Plaintiff did not stay on the medication long enough for the side effects to diminish and therapeutic results to stabilize. Tr. 13. However, although the ALJ felt that Dr. Weigen's opinion was entitled to substantial weight, he would not accord it controlling weight. Tr. 14. He noted that Dr. Weigen was not a psychiatrist, that Plaintiff had not continued with his psychotropic medications and that he never took advantage of the County Medical Health Program to which he had been referred. If Plaintiff's symptoms were as severe as claimed, it would seem logical that Plaintiff would have followed the recommended course of treatment.

Based upon his consideration of all the medical evidence including the statement of Dr. Weigen and the reports of examination from Dr. Gable and Dr. Singh, the record reflects that the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—No. CV-06-04306 RM
RMWLC3                                             7

1 ALJ had good cause to reject Dr. Weigen's conclusory opinion that Plaintiff could not perform any
2 type of work.

### B.  Discounting Plaintiff's Symptom-Reporting

The ALJ may reject a claimant's subjective complaints if "sufficiently specific" findings support such a conclusion. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  Where there is no affirmative evidence of malingering, the ALJ may reject the testimony for "clear and convincing reasons." *Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir. 1998); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that when there is objective medical evidence of an underlying impairment and no evidence of malingering, the ALJ must state specific, clear and convincing reasons for rejecting a claimant's subjective pain testimony).

In the instant case, Plaintiff reported that he had limited ability to sit due to shooting leg and foot pain and swelling in his legs, soreness in his groin and pain from a hernia, inability to think properly, and inability to make it through a day of work.  Plaintiff asserts that the ALJ erred in the determination that the medical evidence does not support Plaintiff's self-described limitations. Plaintiff asserts that the ALJ made very few findings about the content of Plaintiff's testimonial or written statements.  The Commissioner contends that the ALJ properly articulated valid reasons for rejecting Plaintiff's subjective complaints of severe pain.

In his decision, the ALJ noted that Plaintiff testified that he had leg pain due to sciatica, and depression, thyroid problems and vision problems.  The ALJ noted that Plaintiff testified that he told the doctor that he would not take medications for depression because they "knock him out."  Tr. 13. Additionally, the ALJ noted that Plaintiff testified that he stopped working due to pain in his legs from diabetes.  The ALJ noted that Plaintiff testified that he had to quit his job selling cars because it required standing all day, something he stated he could no longer do.  The ALJ also noted that Plaintiff further testified that he was not able to sit for more than thirty minutes because his legs hurt.  Finally, the ALJ noted that Plaintiff testified that his diabetes was out of control.  Thus, contrary to Plaintiff's assertion, the ALJ did made extensive consideration of Plaintiff's subjective complaints.  However, the ALJ discredited Plaintiff's allegations.

1    The ALJ found the "impairments [reported by Plaintiff] are not severe as defined under the
2 regulations because they are not significantly limiting." Tr. 13. The ALJ noted that Plaintiff was
3 not fully compliant with his physician's treatment recommendations. In particular, the ALJ noted
4 that, as reported by Dr. Weigen, Plaintiff was not compliant in the treatment of his depression
5 because he would not stay on his medication long enough for the side effects to diminish and
6 therapeutic results to stabilize. Additionally, the ALJ noted that Dr. Weigen referred Plaintiff to the
7 County Medical Health Program but that Plaintiff did not follow up on the referral for treatment.
8 Thus, the ALJ found that, because Plaintiff did not follow Dr. Weigen's treatment protocols or seek
9 treatment through the County, Plaintiff would not be entitled to benefits for this impairment even if
10 Plaintiff's depression was severe.

11   In addition, Plaintiff never chose to get his hernia repaired despite recommendations to do so.
12 He apparently never followed-up with the testing suggested by Dr. Singh concerning his peripheral
13 neuropathy. Plaintiff's failure to undertake recommended medical care casts doubt on the severity of
14 his symptoms. If they were as disabling as claimed, Plaintiff presumably would have followed
15 through on recommended treatment. Regarding the diabetes, hypothyroidism, and hernia, the ALJ
16 acknowledged that Plaintiff suffered from these conditions. However, the ALJ noted the medical
17 evidence indicated that while Plaintiff suffered from these conditions, these conditions were not
18 severe enough to meet the Regulations. Finally, the ALJ noted that Plaintiff continued to abuse
19 tobacco, contrary to the advice of his physician. Thus, the ALJ made specific, well-supported
20 findings with respect to Plaintiff's subjective complaints.

21   Plaintiff also asserts that the ALJ ignored a statement by his spouse regarding his limitations.
22 Because of this, the ALJ's findings are fundamentally flawed, asserts Plaintiff. Plaintiff's spouse
23 submitted a statement that Plaintiff had problems performing functions such as bending, standing,
24 and lifting; he was physically weak; and he got frustrated and stressed when he could not do things.
25 (Tr. 84, 86, 88). However, Plaintiff's spouse also stated that Plaintiff was able to take a shower
26 every day; he could get ready to go to his appointments; he could help with groceries; was able to
27 take care of his family; he did not need special reminders to take care of personal needs; he helped
28 with laundry and ironing; he was able to drive a car; he could shop in stores and did that three or

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT—No. CV-06-04306 RM
RMWLC3                                        9

four times per week; he was able to visit his brothers and sisters once per week; he went to religious services "regularly"; he followed instructions "pretty well"; he got along with authority figures "pretty good"; he could read and write with eyeglasses; and he "smoked[d] too many cigarettes." (Tr. 81, 82, 83, 84, 85, 86, 87). The ALJ did not discuss this written statement as part of Plaintiff's credibility analysis. However, the comments of Plaintiff's wife do not appear to reveal anything significantly inconsistent with the ALJ's findings. They provide no additional facts to establish disability and, in fact, to some extent supports a finding of no disability.

The ALJ is in a unique position to review all of the evidence and observe the Plaintiff in person. Where, as here, the ALJ provided specific and clear and convincing reasons for rejecting a Plaintiff's testimony, it is well within his province to do so. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that when there is objective medical evidence of an underlying impairment and no evidence of malingering, the ALJ must state specific, clear and convincing reasons for rejecting a claimant's subjective pain testimony).

### C.    Findings Concerning Plaintiff's RFC

The ALJ found that Plaintiff has a RFC to perform a full range of sedentary work. Plaintiff asserts that this determination is improper and unsupported. Plaintiff's sole argument with respect to the ALJ's assessment is that Plaintiff's RFC was improperly reached and not based on all of the evidence because the ALJ allegedly improperly rejected Plaintiff's treating physician's opinions and Plaintiff's subjective evidence. In light of the court's conclusion that the ALJ did not improperly ignore or discount evidence in the ways Plaintiff has alleged, this argument lacks merit. This court concludes that medical evidence and record support the ALJ's finding that Plaintiff was able to perform sedentary work.

### IV.  ORDER

For the foregoing reasons, the court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

DATED:      9/3/2008

RONALD M. WHYTE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—No. CV-06-04306 RM
RMWLC3                                                 10

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

James Hunt Miller
jim_miller0@yahoo.com

**Counsel for Defendants:**

Michael A. Cabotaje
Michael.Cabotaje@ssa.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   9/11/2008                                    TSF
                                              **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—No. CV-06-04306 RM
RMWLC3                                      11